IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KALEO, INC.<br><br>        Plaintiff<br><br>v.<br><br>ASCENDIS PHARMA, INC.,<br>ASCENDIS PHARMA<br>ENDOCRINOLOGY, INC.,<br>ASCENDIS PHARMA A/S<br><br>        Defendants | C.A. No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT
AND DEMAND FOR JURY TRIAL**

kaleo, Inc. ("kaleo" or "Plaintiff"), by way of this Complaint against Ascendis Pharma, Inc., Ascendis Pharma Endocrinology, Inc., and Ascendis Pharma A/S (collectively, "Ascendis" or "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement of U.S. Patent Nos. 8,226,610 (the "'610 Patent"), and 8,690,827 (the "'827 Patent") (collectively, the "Asserted Patents"). This action arises under the United States patent laws, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271 and 281.

**THE PARTIES**

2.     Plaintiff kaleo, Inc. is a corporation organized and existing under the laws of the Commonwealth of Virginia, with a principal place of business at Highwoods One, 10900 Nuckols Road, Suite 200, Glen Allen, Virginia, 23060. kaleo is a pioneering pharmaceutical company dedicated to developing innovative solutions for serious and life-threatening medical conditions.

3. On information and belief, Defendant Ascendis Pharma, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 1000 Page Mill Rd., Palo Alto, California, 94304.

4. On information and belief, Defendant Ascendis Pharma Endocrinology, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business at 212 Carnegie Center Dr., Princeton, New Jersey, 08540.

5. On information and belief, Defendant Ascendis Pharma A/S is a public limited liability company organized under the laws of Denmark with its headquarters at Tuborg Blvd., 2900 Hellerup, Denmark.

6. On information and belief, Defendants manufacture and sell medicament autoinjector systems, including the Skytrofa® Auto-Injector and cartridge (collectively, the "Accused Products" or "Skytrofa").

7. On information and belief, Defendants sell and offer to sell products throughout the United States, including in this judicial district, and introduce products into the stream of commerce that incorporate infringing technology knowing that they will be sold and or used in this judicial district and elsewhere in the United States.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

9. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

10.	Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Ascendis Pharma, Inc. and Ascendis Pharma Endocrinology, Inc. reside within this District and Defendants have committed acts of infringement in this District.

11.	Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) because Ascendis Pharma A/S has committed acts of infringement in this District, including at least the sale of infringing Accused Products in this District, and because at least one of the Defendants is incorporated in the State of Delaware.

12.	Venue is proper in this judicial district under 28 U.S.C. § 1391(c)(3) because Ascendis Pharma A/S is a foreign company and may be sued in any judicial district.

13.	Ascendis Pharma, Inc. is subject to this Court's general and specific personal jurisdiction because, based on information and belief, it is registered to do business in the State of Delaware. Ascendis Pharma, Inc. has purposefully availed itself of the privileges and benefits of the laws of the State of Delaware. And, on information and belief, Ascendis Pharma, Inc. has sufficient minimum contacts with the State of Delaware, regularly conducts and solicits business within the State of Delaware, and kaleo's causes of action arise directly from Ascendis Pharma, Inc.'s business contacts and other activities in the State of Delaware. Additionally, Ascendis Pharma, Inc., either directly or through its related entities, has purposefully and voluntarily placed its infringing products into the stream of commerce with the intention and expectation that they will be acquired and used by customers in this District.

14.	Ascendis Pharma, Inc. engages in activities within this judicial district that infringe (directly or indirectly) the Asserted Patents, either literally or under the doctrine of equivalents, including the importation, provision of, use, operation, sales, offering for sale, and advertising of the Accused Products. Ascendis Pharma, Inc. also infringes the Asserted Patents by importing,

making, using, offering for sale, selling, maintaining, providing instructions for use, and/or advertising the Accused Products within this District, either literally or under the doctrine of equivalents.

15. Ascendis Pharma, Inc. encourages and induces third parties, including partners and customers, to use the Accused Products in an infringing way at least by advertising and distributing the Accused Products and providing instructions for use, materials, training, and services regarding the Accused Products.

16. Ascendis Pharma Endocrinology, Inc. is subject to this Court's general and specific personal jurisdiction because, based on information and belief, it is registered to do business in the State of Delaware. Ascendis Pharma Endocrinology, Inc. has purposefully availed itself of the privileges and benefits of the laws of the State of Delaware. And, on information and belief, Ascendis Pharma Endocrinology, Inc. has sufficient minimum contacts with the State of Delaware, regularly conducts and solicits business within the State of Delaware, and kaleo's causes of action arise directly from Ascendis Pharma Endocrinology, Inc.'s business contacts and other activities in the State of Delaware. Additionally, Ascendis Pharma Endocrinology, Inc., either directly or through its related entities, has purposefully and voluntarily placed its infringing products into the stream of commerce with the intention and expectation that they will be acquired and used by customers in this District.

17. Ascendis Pharma Endocrinology, Inc. engages in activities within this judicial district that infringe (directly or indirectly) the Asserted Patents, either literally or under the doctrine of equivalents, including the importation, provision of, use, operation, sales, offering for sale, and advertising of the Accused Products. Ascendis Pharma Endocrinology, Inc. also infringes the Asserted Patents by importing, making, using, offering for sale, selling, maintaining, providing

instructions for use, and/or advertising the Accused Products within this District, either literally or under the doctrine of equivalents.

18. Ascendis Pharma Endocrinology, Inc. encourages and induces third parties, including partners and customers, to use the Accused Products in an infringing way at least by advertising and distributing the Accused Products and providing instructions for use, materials, training, and services regarding the Accused Products.

19. Ascendis Pharma A/S is subject to this Court's general and specific personal jurisdiction because, based on information and belief, it has purposefully availed itself of the privileges and benefits of the laws of the State of Delaware. On information and belief, Ascendis Pharma A/S has sufficient minimum contacts with the State of Delaware, regularly conducts and solicits business within the State of Delaware, and kaleo's causes of action arise directly from Ascendis Pharma A/S's business contacts and other activities in the State of Delaware. Additionally, Ascendis Pharma A/S, either directly or through its related entities, has purposefully and voluntarily placed its infringing products into the stream of commerce with the intention and expectation that they will be acquired and used by customers in this District.

20. Ascendis Pharma A/S is also subject to this Court's general and specific personal jurisdiction pursuant to 28 U.S.C. § 1391(c)(3) because it is a foreign company.

21. Ascendis Pharma A/S engages in activities within this judicial district that infringe (directly or indirectly) the Asserted Patents, either literally or under the doctrine of equivalents, including the provision of, use, operation, sales, offering for sale, installation, and advertising of the Accused Products. Ascendis Pharma A/S also infringes the Asserted Patents by making, using, offering for sale, selling, maintaining, providing instructions for use, and/or advertising the Accused Products within this District, either literally or under the doctrine of equivalents.

22.     Ascendis Pharma A/S encourages and induces third parties, including partners and customers, to use the Accused Products in an infringing way at least by advertising and distributing the Accused Products and providing instructions for use, materials, training, and services regarding the Accused Products.

## BACKGROUND

23.     kaleo, Inc. is a global medical technology company dedicated to improving the quality, effectiveness, safety, and efficiency of healthcare. Originally Intelliject, kaleo is the product of twin brothers—Eric and Evan Edwards—who had severe, life-threatening allergies as children. Their allergies required them to always carry epinephrine, which inspired them to imagine a better delivery system. This led to the development of an improved epinephrine auto-injector, and over time the company evolved into what is now kaleo.

24.     kaleo comes from the Greek word meaning "a calling" or "purpose," reflected in the company's stated mission[1] to "empower patients and healthcare providers with innovative, life-saving solutions." To accomplish this mission, kaleo focuses its products on ergonomic, reliable, and precise patient-centric designs. Practicing this ethos, kaleo invests in both the device and the drugs they deliver. For example, through its "Kaléo Cares" program, the company donated EVZIO (a naloxone-based opioid overdose product) auto-injectors to organizations like first responders and nonprofits. In one 15-month period, kaleo-donated EVZIO devices were used to help save more than 600 lives in connection with suspected opioid overdoses.

25.     kaleo specializes in the design and manufacturing of auto-injectors, with one of its flagship products, Auvi-Q® (epinephrine injection, USP) used to treat anaphylaxis. Auvi-Q is notable for being compact, utilizing electronic outputs, including voice instructions, guiding users

---

[1] https://kaleo.com/about/

step-by-step, and improving operator safety and reliability. Retroactive analyses show that prescriptions of AUVI-Q are associated with lower rates of anaphylaxis-related inpatient hospitalizations compared to other epinephrine auto-injectors.[2] This suggests that better usability, faster or more reliable delivery, or improved patient adherence may lead to fewer severe outcomes (i.e., fewer hospital admissions).

26. Similarly, kaleo's 10 mg naloxone auto-injector ("NAI 10 mg") is designed as a countermeasure for use by military personnel and chemical incident responders for the emergency treatment of high-potency opioid exposures. It is part of kaleo's emphasis on readiness, speed, and reliability. kaleo's work with military and first responders goes beyond NAI 10 mg, actively developing additional auto-injectors and related technologies for defense and emergency response. For example, Kaleo was awarded a contract with BARDA to develop a next-generation pralidoxime chloride (2-PAM) auto-injector to counter organophosphate or nerve agent poisoning, which will become part of the CHEMPAK program to provide communities with effective medical countermeasures. kaleo has received awards for its groundbreaking innovations.

27. Beyond single-dosage, single-drug products, kaleo has also developed a proprietary platform called the Aerio™ Auto-Injector Platform, which is designed to handle a wide range of formulation volumes and viscosities. This capability is important because different drugs have different consistency or stability needs, and an auto-injector that can handle a range of characteristics expands what medicines can be adapted for that form factor.

---

[2] https://kaleo.com/retrospective-analysis-of-u-s-claims-data-shows-auvi-q-epinephrine-injection-usp-prescription-associated-with-lower-rates-of-anaphylaxis-related-inpatient-hospitalizations-compared-to-other/ (When measured per anaphylaxis event, the hospitalization rate was 0.00153 for AUVI-Q and 0.00367 for Other EAIs, representing a 58.24% relative reduction.).

28. Multi-drug, multi-dosage products, like the Aerio™, while also focusing on patient-friendly delivery mechanisms, reduce error in the administration of medications. For example, the AUVI-Q's visual and auditory cues and ergonomic design allow users to use the device correctly under stressful conditions, allow younger users to more-independently administer their own medications, and help ensure the full dosage is administered.

**ASSERTED PATENTS**

29. kaleo is the assignee and owner of the right, title, and interest in and to the '610 Patent, including the right to assert all causes of action arising under the '610 Patent and the right to any remedies for infringement thereof.

30. The '610 Patent is entitled "Medical Injector with Compliance Tracking and Monitoring." The '610 Patent issued on July 24, 2012 to inventors Eric S. Edwards, Evan T. Edwards, Mark J. Licata, Paul F. Meyers, David A. Weinzierl, and T. Spencer Williamson, IV. The '610 Patent issued from United States Patent Application No. 12/017,405 which was filed on January 22, 2008. A copy of the '610 Patent is attached as **Exhibit A**.

31. The '610 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

32. kaleo is the assignee and owner of the right, title, and interest in and to the '827 Patent, including the right to assert all causes of action arising under the '827 Patent and the right to any remedies for infringement thereof.

33. The '827 Patent is entitled "Devices, Systems, and Methods for Medicament Delivery." The '827 Patent issued on April 8, 2014 to inventors Evan T. Edwards, Eric S. Edwards, and Mark J. Licata. The '827 Patent issued from United States Patent Application No. 12/818,496, which was filed on June 18, 2010. A copy of the '827 Patent is attached as **Exhibit B.**

34. The '827 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

35. Defendants have had knowledge of the Asserted Patents since at least May 13, 2025 when kaleo's counsel sent a letter to Defendant Ascendis Pharma A/S's Chief Legal Officer. On June 16, 2025, kaleo's counsel provided additional information to Ascendis, detailing how the Asserted Patents relate to the Accused Products.

## ACCUSED PRODUCTS

36. Defendants claim that SKYTROFA® is "the first FDA approved product that delivers somatropin (growth hormone) by sustained release over one week." *See* https://investors.ascendispharma.com/node/10531/pdf. Notably, the Skytrofa drug is "designed for use only with the SKYTROFA® Auto-Injector." Among Skytrofa's purported innovative design benefits is that it provides "clear direction at every step of the [injection] process with precise mixing and automated injection." https://skytrofa.com/why-skytrofa/skytrofa-auto-injector/.

37. As indicated in the Skytrofa® Prescribing Information (PI), which is approved by the Food & Drug Administration (FDA), "[t]he SKYTROFA cartridge has been designed for use only with the SKYTROFA Auto-Injector."[3]

38. The PI further notes that "[w]hen the injection needle is inserted into the skin, the device automatically delivers the drug product. The built-in electronics and software assist the user during the entire preparation and injection sequence and provide confirmation that the full dose has been delivered."

39. On information and belief, Defendants have made the Accused Products available to consumers, providing a step-by-step guide to obtain the Accused Products, including a

---

[3] https://www.ascendispharma.us/products/pi/skytrofa/skytrofa_pi.pdf

"Discussion Guide" for potential consumers to use to speak with their doctor about the Accused Products. *See* https://skytrofa.com/get-started/.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,226,610

40. kaleo realleges and incorporates the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

41. On information and belief, Ascendis has infringed and continues to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 24 of the '610 Patent by making, using, selling and/or offering for sale the Accused Products.

42. Claim 24 of the '610 Patent covers a novel medicament delivery device and recites:

An apparatus, comprising:

a housing;

a medicament container disposed within the housing;

a delivery mechanism configured to deliver a medicament within the medicament container to a target location, the delivery mechanism including an actuator, a first portion of the actuator configured to engage the target location to move the actuator from a first position to a second position to initiate delivery of the medicament;

a lock member removably coupled to the housing to limit movement of the actuator such that the actuator is configured to move from the first position to the second position when the lock member is removed from the housing; and

an electronic circuit system configured to be coupled to the housing, the electronic circuit system including a switch, the electronic circuit system configured to output an electronic signal when the switch is moved from a first state to a second state,

a second portion of the actuator configured to move the switch from the first state to the second state when the actuator is moved from the first position to the second position.

43. The Accused Products contain each of the above limitations. *See* **Exhibit C**.

44. The Accused Products are apparatuses.

45. The Accused Products have a housing.

46. The Accused Products have a medicament container disposed within the housing.

47. The Accused Products have a delivery mechanism configured to deliver a medicament within the medicament container to a target location.

48. The delivery mechanism of the Accused Products has an actuator.

49. A first portion of the actuator of the delivery mechanism of the Accused Products is configured to engage the target location to move the actuator from a first position to a second position to initiate delivery of the medicament.

50. The Accused Products have a lock member removably coupled to the housing to limit movement of the actuator such that the actuator is configured to move from the first position to the second position when the lock member is removed from the housing.

51. The Accused Products have an electronic circuit system configured to be coupled to the housing.

52. The electronic circuit system of the Accused Products has a switch.

53. The electronic circuit system of the Accused Products is configured to output an electronic signal when the switch is moved from a first state to a second state.

54. A second portion of the actuator of the delivery mechanism of the Accused Products is configured to move the switch from the first state to the second state when the actuator is moved from the first position to the second position.

55. On information and belief, Ascendis markets and sells the Accused Products in the United States to its partners, clients, customers, and/or end users who use the Accused Products across this country and in this District.

56. On information and belief, at least as of June 16, 2025, Ascendis has induced and continues to induce others to infringe at least one claim of the '610 Patent under 35 U.S.C. § 271(b)

by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Ascendis's partners, clients, customers, and/or end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '610 Patent.

57. In particular, on information and belief, Ascendis's actions that aid and abet others such as its partners, clients, customers, and/or end users to infringe include advertising and distributing the Accused Products and providing instructions for use, training, and services regarding the Accused Products.

58. On information and belief, Ascendis is liable for contributory infringement of the '610 Patent under 35 U.S.C. § 271(c) for offering to sell and selling in the United States the Accused Products which are especially made or adapted for use to infringe the '610 Patent. The Accused Products are a material component for use in practicing the '610 Patent, are specifically made for an infringing use, and are not a staple article of commerce suitable for a non-infringing use. For example, the Accused Products and the example functionality described above have no substantial non-infringing uses but are specifically designed to practice the claims of the '610 Patent. The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose. Indeed, the Accused Products are medicament delivery devices, containing all the structural elements claimed in the '610 Patent, specifically designed for delivering medicament.

59. In addition, the Accused Products provided by Ascendis constitute a material part of the claimed invention, providing all components and features of the claimed system of the '610 Patent. For example, the Accused Products constitute a material part of the invention claimed

because they contain every element of the claimed system, including a housing, a medicament container, a delivery mechanism configured to carry out the claimed functionality, a lock member, and an electronic circuit system configured to carry out the claimed functionality.

60. On information and belief, the infringing acts of each partner or customer regarding the Accused Product are attributable to Ascendis. For example, on information and belief, Ascendis directs and controls the activities or actions of its third-party customers in connection with the Accused Products by contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Product which, when followed and used, result in infringement.

61. As a consequence of Ascendis's direct and indirect infringement of the '610 Patent, both literally and under the doctrine of equivalents, kaleo has been and continues to be damaged in an amount not yet determined and is entitled to recover damages pursuant to 35 U.S.C. § 284.

62. On information and belief, Ascendis's infringement of the '610 Patent will continue in the future, and kaleo will be irreparably harmed as a consequence unless Ascendis's infringing acts are enjoined by this Court.

63. Upon information and belief, Ascendis's infringement of the '610 Patent has been, and continues to be, willful. Since at least June 16, 2025, Ascendis knew of the '610 Patent and knew it was infringing the '610 Patent.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,690,827

64. kaleo realleges and incorporates the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

65. On information and belief, Ascendis has infringed and continues to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claims 1, 2, 4, 8, and 9 of the '827 Patent by making, using, selling and/or offering for sale the Accused Products.

66. Claim 1 of the '827 Patent covers a novel medicament delivery apparatus and recites:

> An apparatus, comprising:
>
> a housing, a distal end surface of the housing defining an opening;
>
> a medicament container disposed within the housing;
>
> a delivery mechanism configured to produce a force to convey a medicament from the medicament container via the opening; and
>
> an electronic circuit system including a light output device and a sensor, the sensor configured to produce a signal when the distal end surface is in contact with a body, the electronic circuit system configured to produce a visual output via the light output device in response to the signal produced by the sensor.

67. The Accused Products contain each of the above limitations. *See* **Exhibit D**.

68. The Accused Products are apparatuses.

69. The Accused Products have a housing.

70. A distal end surface of the housing of the Accused Products defining an opening.

71. The Accused Products have a medicament container disposed within the housing.

72. The Accused Products have a delivery mechanism.

73. The delivery mechanism of the Accused Products is configured to produce a force to convey a medicament from the medicament container via the opening.

74. The Accused Products have an electronic circuit system.

75. The electronic circuit system of the Accused Products includes a light output device and a sensor.

76. The sensor of the electronic circuit system of the Accused Products is configured to produce a signal when the distal end surface is in contact with a body.

77. The electronic circuit system of the Accused Products is configured to produce a visual output via the light output device in response to the signal produced by the sensor.

78. Claim 2 of the '827 Patent depends from claim 1 and recites:

The apparatus of claim 1, further comprising:

> an actuator configured to be manipulated by a user to actuate the delivery mechanism, the visual output configured to illuminate the actuator.

79. The Accused Products contain each of the above limitations. *See* **Exhibit D**.

80. The Accused Products are an apparatus according to claim 1. *See* ¶¶ 66-77, *supra*.

81. The Accused Products have an actuator.

82. The actuator of the Accused Products is configured to be manipulated by a user to actuate the delivery mechanism.

83. The visual output produced by the electronic circuit system of the Accused Products is configured to illuminate the actuator.

84. Claim 4 of the '827 Patent depends from claim 1 and recites:

> The apparatus of claim 1, wherein the electronic circuit system includes a speaker, the electronic circuit system configured to produce an audible output in response to the signal produced by the sensor.

85. The Accused Products contain each of the above limitations. *See* **Exhibit D**.

86. The Accused Products are an apparatus according to claim 1. *See* ¶¶ 66-77, *supra*.

87. The electronic circuit system of the Accused Products includes a speaker.

88. The electronic circuit system of the Accused Products is configured to produce an audible output in response to the signal produced by the sensor.

89. Claim 8 of the '827 Patent depends from claim 1 and recites:

15

> The apparatus of claim 1, wherein the light output device is any one of a light-emitting diode, a liquid crystal display, an organic polymer display or a fiber optic display.

90. The Accused Products contain each of the above limitations. *See* **Exhibit D**.

91. The Accused Products are an apparatus according to claim 1. *See* ¶¶ 66-77, *supra*.

92. The light output device of the electronic circuit system of the Accused Products is any one of a light-emitting diode, a liquid crystal display, an organic polymer display or a fiber optic display.

93. Claim 9 of the '827 Patent depends from claim 1 and recites:

> The apparatus of claim 1, wherein the medicament is any one of a medicine, medication, drug, pharmaceutical, prescriptive, agent, antidote, anti-venom, hormone, stimulant, vasodilator, anesthetic, or nutritional supplement.

94. The Accused Products contain each of the above limitations. *See* **Exhibit D**.

95. The Accused Products are an apparatus according to claim 1. *See* ¶¶ 66-77, *supra*.

96. The medicament conveyed from the medicament container of the Accused Products is any one of a medicine, medication, drug, pharmaceutical, prescriptive, agent, antidote, anti-venom, hormone, stimulant, vasodilator, anesthetic, or nutritional supplement.

97. On information and belief, Ascendis markets and sells the Accused Products in the United States to its partners, clients, customers, and/or end users who use the Accused Products across this country and in this District.

98. On information and belief, at least as of June 16, 2025, Ascendis has induced and continues to induce others to infringe at least one claim of the '827 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Ascendis's partners, clients, customers, and/or end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '827 Patent.

99. In particular, on information and belief, Ascendis's actions that aid and abet others such as its partners, clients, customers, and/or end users to infringe include advertising and distributing the Accused Products and providing instructions for use, training, and services regarding the Accused Products.

100. On information and belief, Ascendis is liable for contributory infringement of the '610 Patent under 35 U.S.C. § 271(c) for offering to sell and selling in the United States the Accused Products which are especially made or adapted for use to infringe the '827 Patent. The Accused Products are a material component for use in practicing the '827 Patent, are specifically made for an infringing use, and are not a staple article of commerce suitable for a non-infringing use. For example, the Accused Products and the example functionality described above have no substantial non-infringing uses, but are specifically designed to practice the claims of the '827 Patent. The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose. Indeed, the Accused Products are medicament delivery devices, containing all the structural elements claimed in the '827 Patent, specifically designed for delivering medicament.

101. In addition, the Accused Products provided by Ascendis constitute a material part of the claimed invention, providing all components and features of the claimed system of the '827 Patent. For example, the Accused Products constitute a material part of the invention claimed because they contain every element of the claimed system, including a housing, a medicament container, a delivery mechanism configured to carry out the claimed functionality and an electronic circuit system configured to carry out the claimed functionality.

RLF1 33886350v.1

102. On information and belief, the infringing acts of each partner or customer regarding the Accused Product are attributable to Ascendis. For example, on information and belief, Ascendis directs and controls the activities or actions of its third-party customers in connection with the Accused Products by contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Product which, when followed and used, result in infringement.

103. As a consequence of Ascendis's direct and indirect infringement of the '827 Patent, both literally and under the doctrine of equivalents, kaleo has been and continues to be damaged in an amount not yet determined and is entitled to recover damages pursuant to 35 U.S.C. § 284.

104. On information and belief, Ascendis's infringement of the '827 Patent will continue in the future, and kaleo will be irreparably harmed as a consequence unless Ascendis's infringing acts are enjoined by this Court.

105. Upon information and belief, Ascendis's infringement of the '827 Patent has been, and continues to be, willful. Since at least June 16, 2025, Ascendis knew of the '827 Patent and knew it was infringing the '827 Patent.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, kaleo demands a trial by jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, kaleo demands judgment for itself and against Defendants as follows:

A. An adjudication that Defendants have infringed the Asserted Patents;

B. An award of damages to be paid by Defendants adequate to compensate kaleo for Defendants' past infringement of the Asserted Patents, and any continuing or future infringement

of the Asserted Patents through the date such judgment is entered, including pre-judgment and post-judgment interest, costs, expenses and an accounting of all infringing acts;

C.   An adjudication that Defendants' infringement has been willful and an award of treble damages;

D.   A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of kaleo's reasonable attorneys' fees; and

E.   An award to kaleo of such further relief at law or in equity as this Court deems just and proper.

| | |
|---|---|
| OF COUNSEL:<br>Erik B. Milch<br>Elizabeth Shrieves<br>Proskauer Rose LLP<br>1001 Pennsylvania Ave., NW<br>Suite 600 South<br>Washington, DC 20004-2533<br>(202) 416-6899<br>emilch@proskauer.com<br>eshrieves@proskauer.com | */s/ Kelly E. Farnan*<br>Kelly E. Farnan (#4395)<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>farnan@rlf.com<br><br>*Attorneys for Plaintiff kaleo, Inc.* |

Joseph M. Drayton
Connor J. Villar
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
(212) 969-2900
cvillar@proskauer.com
jdrayton@proskauer.com

Alan S. Teran
Proskauer Rose LLP
2255 Glades Road
Suite 421 Atrium
Boca Raton, FL 33431-7360
(561) 995-4723
ateran@proskauer.com

Dated:  September 29, 2025